UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MCKINNEY SALVAGE, LLC | CIVIL ACTION |
| VERSUS | NO: 23-5129 |
| RIGID CONSTRUCTORS, LLC, ET AL | SECTION: "J"(5) |

## ORDER AND REASONS

Before the Court is a *Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) or, Alternatively, Motion to Transfer* **(Rec. Doc. 11)** filed by Defendant and Cross-Claim Defendant, Certain Underwriters at Lloyd's Subscribing Severally to Policy bearing Unique Market Reference No. B1115E210162 ("Lloyds"); an opposition filed by Plaintiff, McKinney Salvage LLC ("McKinney") (Rec. Doc. 24); an opposition filed by Defendant Rigid Constructors, LLC ("Rigid") (Rec. Doc. 25); a reply filed by Lloyds (Rec. Doc. 29); and a sur-reply filed by McKinney (Rec. Doc. 31). Having considered the motion and memoranda, the record, and the applicable law, the Court finds that the motion should be **GRANTED.**

## FACTS AND PROCEDURAL BACKGROUND

This case arises from the June 15, 2022 capsizing and sinking of the BARGE AMBITION (the "AMBITION") while under tow off the coast of Cameron Parish, Louisiana. Defendant Rigid was the owner and/or owner pro hac vice of the AMBITION. The AMBITION was comprised of two barges welded together to form a platform for a mounted crane. At the time of the sinking, the primary insurance in effect was a protection and indemnity and hull insurance policy (the "Primary Policy")

1

issued by Defendant Mitsui Sumitomo Marine Management and Mitsui Sumitomo Insurance USA, Inc. and Defendant U.S. Specialty Insurance Company (collectively, the "Primary Insurers"). The AMBITION was also insured through an umbrella policy written by Movant Lloyds, providing an additional $10,000,000 of protection over the Primary Policy.

Shortly after the sinking, Rigid began negotiating with Plaintiff McKinney to render salvage services for the sunken barge. On July 14, 2022, Rigid and McKinney contracted to raise and recover the AMBITION, the crane, and equipment. ("Salvage Agreement," Rec. Doc. 3-1).[1] The Salvage Agreement stated that McKinney's rate for salvage services was $110,000.00/Day Rate and that if the charges were not fully paid within 30 days from the invoice, Rigid would pay 1.5% interest per month plus attorney's fees and court costs. *Id.* at 2-3. The Salvage Agreement also specified that any litigation arising out of the agreement or services therein would be brought in the United States District Court for the Eastern District of Louisiana. *Id.* at 8.

On August 8, 2022, McKinney commenced the salvage operations and continued working until October 17, 2022. During that work and following the completion of salvage services, McKinney sent Rigid a series of invoices totaling $9,076,885.53 (excluding interest). (Invoices, Rec. Doc. 3-2). Rigid failed to pay the contract balance to McKinney.

---

[1] For 12(b)(6) motion, "[t]he court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC, 594 F.3d 383, 387 (5th Cir. 2010) (citing Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498–99 (5th Cir.2000)). McKinney attached the Salvage Agreement, Invoices, and Email Confirming Guarantee (Rec. Docs. 3-1, 3-2, 3-3) as exhibits to its Amended Complaint (Rec. Doc. 3), so the Court may properly consider those documents in ruling on the instant motion to dismiss.

On November 30, 2022, Rigid filed suit against the insurer Defendants in the 27th Judicial District Court for the Parish of St. Landry, Louisiana, and that case was subsequently removed to the United States District Court for the Western District of Louisiana on December 23, 2022 *(Rigid Constructors, LLC v. Mitsui Sumitomo Marine Management (USA), Inc.*, et al., No. 6:22-cv-06234, Rec. Doc. 1-2, the "Western District case"). In the Western District case, Rigid claims that the insurers refused in bad faith to pay insurance benefits and seeks payment of the benefits as well as penalties and attorney fees. *Id.* Rigid's Western District complaint references the email correspondence, *infra*, promising payment of the salvage costs. *Id.* at 6. The Western District case is a non-maritime action set for a jury trial in January 2025.

On September 7, 2023, McKinney filed its complaint against Rigid in this Court, and on September 12, 2023, McKinney amended the complaint, joining Rigid's insurers as defendants. (Rec. Doc. 3). In the amended complaint, McKinney alleges two claims: (1) breach of contract and (2) detrimental reliance/unjust enrichment. *Id.* For the breach of contract claim, McKinney claims that Rigid breached its contractual and legal obligations to McKinney, and McKinney is entitled to judgment in the amount of $9,076,885.53 plus interest, costs, and attorney's fees. *Id.* at 4-5. In Count Two, McKinney claims that, as a condition precedent for McKinney's acceptance of the request for salvage services and the execution of the Salvage Agreement, McKinney demanded that it would be provided a "guarantee from a solvent and trustworthy source guaranteeing its fees and expenses would be paid." *Id.* at 5. So,

3

as an inducement for McKinney, McKinney alleges that Mitsui Sumimoto Marine Management ("MSMM") guaranteed that Lloyds would pay for McKinney's services and confirmed that the insurers were on notice and aware of the commitment. *Id.* at 6. McKinney goes on to allege that Lloyds's commitment to payment was confirmed in an email from Claurisse Campanele of MSMM to Rigid Constructor's insurance broker, and that email was presented to McKinney as confirmation of Lloyds's guarantee. *Id.* Therefore, as a result of Rigid's and Lloyds's refusal to pay the sums owed, McKinney claims that it relied on Defendants' representations to its detriment and that Defendants were unjustly enriched. *Id.* at 6-7.

On October 27, 2023, Rigid filed an answer and crossclaims against Lloyds and the Primary Insurers. On November 2, 2023, Lloyds filed the instant motion, seeking dismissal of the claims against Lloyds or, alternatively, transfer to the Western District of Louisiana under the first-to-file rule. (Rec. Doc. 11).

## DISCUSSION

In the instant motion, in addition to moving for dismissal under Federal Rule of Civil Procedure 12(b)(6), Lloyds moves to transfer this case to another district court. The Court will consider the motion to transfer first.

Lloyds argues that this case should be transferred to the Western District of Louisiana pursuant to the first-to-file rule. (Rec. Doc. 11-1, at 15). In response, McKinney argues that this Court is not an improper venue because the Salvage Agreement contains an express forum selection clause requiring litigation arising out of the agreement to be brought in the Eastern District of Louisiana. (Rec. Doc. 24, at

4

12). McKinney also argues that the Western District case's predominant issues are the cause of the sinking and Rigid's potential recovery against its insurers, while the instant case's predominant issue is McKinney's recovery of its salvage fees and the parties responsible for such fees. *Id.* at 12-13.

Rigid also opposes transfer based on the forum selection clause and notes that this case and the Western District case will utilize different trial procedures; this case is set for a bench trial and the Western District case is set for a jury trial. (Rec. Doc. 25, at 10-11). In reply, Lloyds argues that it is not a party to the Salvage Agreement, so the venue selection clause does not apply to Lloyds. (Rec. Doc. 29, at 6-7). Further, Lloyds argues that both cases seek entitlement to the same damages (McKinney's salvage expenses), creating a potential for conflicting judgments being rendered. *Id.* at 7.

Under the first-to-file rule, "when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap." *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th. Cir. 1999). In deciding if a substantial overlap exists, the court looks at factors such as whether the core issues are the same, the likelihood of conflict, the comparative advantage and the interest of each forum in resolving the dispute, and whether much of the proof adduced would likely be identical. *Int'l Fid. Ins. Co. v. Sweet Little Mexico Corp.*, 665 F.3d 671, 677-78 (5th Cir. 2011). "Where the overlap between two suits is less than complete, the judgment is made case by case, based on such factors as the extent of overlap, the likelihood of conflict, the comparative

5

advantage and the interest of each forum in resolving the dispute." *Id.* (quoting *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 951 (5th Cir. 1997)).

"In the absence of compelling circumstances, the court initially seized of a controversy should be the one to decide whether it will try the case." *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 407 (5th Cir. 1971). If a court finds no compelling circumstances exist to set aside the first-to-file rule, then the court must decide whether to stay, dismiss, or transfer the action. *Poche v. Geo-Ram, Inc.*, No. 96-1437, 1996 WL 371679, at *2 (E.D. La. July 2, 1996) (citing *Igloo Products Corp. v. The Mounties*, Inc., 735 F. Supp. 214, 218 (S.D. Tex. 1990)).

First, the Court will first determine if substantial overlap exists between this case and the Western District case, which was the first-filed case. In the Western District Case, Rigid seeks damages for breach of contract, bad faith, breach of promise, breach of fair dealing, and detrimental reliance from Mitsui Sumitomo Marine Management (USA), Inc., Mitsui Sumitomo Insurance USA, Inc., U.S. Specialty Insurance Company, Continental Underwriters Ltd., LLC, and Lloyds. *Rigid Constructors, LLC v. Mitsui Sumitomo Marine Management (USA), Inc.*, et al., No. 6:22-cv-06234, Rec. Doc. 1-2, at 1 (W.D. La. Dec. 23, 2022). Rigid claims that Mitsui Management assured Rigid that salvage costs for the AMBITION from McKinney were covered in its policy and that Mitsui Management emailed Rigid's insurance broker stating that Lloyds will be paying for McKinney's services. *Id.* at 5. This is the same email correspondence at issue in the complaint in this case. Additionally, in the Western District complaint, Rigid seeks payment for the salvage

6

costs invoiced by McKinney for the AMBITION, plus additional costs, attorney fees, and penalties for bad faith. *Id.* at 7-9.

The extent of the overlap of parties and issues between the Western District Case and this case is substantial. Trying the two cases in two different forums would be wasteful and inefficient, considering the possibility of inconsistent rulings regarding payment of the salvage costs. In the case before this Court, McKinney also seeks payment for the salvage costs of the AMBITION from Rigid as well as the same defendants in the Western District Case: Mitsui Sumitomo Marine Management (USA), Inc., Mitsui Sumitomo Insurance USA, Inc., U.S. Specialty Insurance Company, Continental Underwriters Ltd., LLC, and Lloyds. (Rec. Doc. 3, at 2-3). McKinney also alleges that it relied, to its detriment, on the assurances to pay in the same email also cited in the Western District complaint. *Id.* at 6.

Although the two cases share similar issues (who is responsible for paying McKinney's salvage costs; whether the parties relied to their detriment on the insurers' promises; whether the insurers were unjustly enriched by failing to pay the salvage costs), the issues are not identical. Unlike the Western District case, the instant case also includes an additional party (McKinney) and additional issues: the terms and alleged breach of the Salvage Agreement between McKinney and Rigid. Cases do not need to be identical or have mirroring parties in order to substantially overlap. *See Int'l Fidelity Ins. Co.*, 665 F.3d at 678. Thus, the Court could still transfer McKinney's claims against Rigid and the insurers despite not being a party in the first-filed Western District Action.

7

However, a compelling circumstance may exist to justify disregarding the first-to-file rule: the forum selection clause in the Salvage Agreement between McKinney and Rigid. The Salvage Agreement contains an express forum selection clause that "any litigation arising out of this agreement and/or the services contemplated herein shall be brought in the United State District Court for the Eastern District of Louisiana." (Rec. Doc. 3-1, at 8). The Court finds that (1) the clear language of the forum selection clause specifies that litigation shall occur in the Eastern District of Louisiana and (2) the causes of action alleged in this case (breach of contract, detrimental reliance, and unjust enrichment) arise out of the Salvage Agreement and the salvage services contemplated therein. *See Cormeum Lab Servs., LLC v. Coastal Lab'ys, Inc.*, No. 20-2196, 2021 WL 5405219, at *4 (E.D. La. Jan. 15, 2021) (stating that, on a motion to transfer, a court must determine the scope of a forum selection clause and whether the clause is mandatory) (citing *City of New Orleans v. Municipal Administrative Services, Inc.*, 376 F.3d 501, 504 (5th Cir. 2004); *Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216, 222 (5th Cir. 1998)). Further, there is no indication that the forum selection clause is unreasonable, and none of the parties in this case argue as such. *Haynsworth v. The Corp.*, 121 F.3d 956, 963 (5th Cir. 1997) ("The presumption of enforceability may be overcome, however, by a clear showing that the clause is 'unreasonable' under the circumstances"). Accordingly, the Court concludes that the forum selection clause here is mandatory and enforceable, and the cause of action here is within its scope.

If a forum selection clause is mandatory and enforceable and if the cause of

8

action is within its scope, the court must then consider the public interest factors for a venue transfer. *Weber v. PACT XPP Techs.*, AG, 811 F.3d 758, 767 (5th Cir. 2016) (explaining that if a forum selection clause is mandatory and enforceable, the court should not consider private interest factors because the parties contracted for a specific forum). The forum selection clause should control except in unusual, uncommon cases where the public interest factors are "sufficiently strong to outweigh a valid [forum selection clause]." *Id.* (citing *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 64 (2013)). The public interest factors include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n. 6 (1981). The court must also give "some weight to the plaintiffs' choice of forum." *Atl. Marine*, 571 U.S. at 62 n.6 (citing *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955)).

Considering the foregoing factors, first, there is no congestion in this district or the Western District of Louisiana. Second, there is also no legitimate local interest in having this case decided in the Eastern District of Louisiana rather than in the Western District of Louisiana, where the sinking and the salvage work both occurred. Also relevant to this factor is the significant potential for conflicting judgments. It would be illogical for this Court to render judgment as to the salvage fees in conflict with the Western District. Third, this Court and the Western District are equally well-versed in Louisiana contract law as well as maritime law. Finally, Plaintiff

McKinney's choice of forum is in agreement with the forum it selected in the Salvage Agreement. Thus, only one of the relevant factors weighs against transfer.

The Court concludes that the instant case is one of the unusual, uncommon cases where the public interest factors are sufficiently strong to outweigh the applicable forum selection clause. In this case, a salvor is seeking payment for a salvage contract with a vessel owner and its insurers in this court, months after a vessel owner filed suit in the district where the salvage occurred seeking insurance reimbursement for those same expenses. Although the parties contracted to litigate in this district, the public interest factors enumerated above, along with comity and judicial efficiency, allow this Court to transfer this case to the district where the events giving rise to Plaintiff's claims occurred. Accordingly,

## CONCLUSION

**IT IS HEREBY ORDERED** that the *Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) or, Alternatively, Motion to Transfer* **(Rec. Doc. 11)** is **GRANTED.** This case is transferred to the United States District Court for the Western District of Louisiana

New Orleans, Louisiana, this 26th day of January, 2024.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE